UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:21-cv-62116

FLÁVIA Z. SOUZA, and all others similarly
situated, and MONSTER CONSULTING
GROUP LLC,

    Plaintiffs,

v.

DIRECT OFFICE SOLUTIONS, INC., and
RONALD R. BOEHM,

    Defendants.
_____/

## VERIFIED COMPLAINT (COLLECTIVE ACTION) AND DEMAND FOR JURY TRIAL

Plaintiffs, Flávia Z. Souza ("Souza"), and all others similarly situated, and Monster Consulting Group LLC ("Monster"), by and through the undersigned attorney, hereby file this Complaint (and collective action) against Defendants, Direct Office Solutions, Inc. ("DOS") and Ronald R. Boehm ("Boehm"), for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), as amended. Further, Souza and Monster assert legal claims under the Florida common law against DOS.

### INTRODUCTION

1.    Souza and other individuals similarly situated were employed by, or contracted with, DOS, which operates an office furniture store in Fort Lauderdale, Florida, that serves the South Florida region. Specifically, Defendants recruit and retain professionals to sell the company's inventory, as well as the products of other manufacturers, to customers. Defendants classified the sales professionals as independent contractors. However, Souza contends

1

Defendants misclassified her and other professionals as independent contractors when, in fact, they were employees of DOS. As a result, Souza claims that, as employees, she and other professionals were underpaid when Defendants did not provide Souza and others overtime wages as required by the FLSA.

**PARTIES, JURISDICTION AND VENUE**

2. Souza is a current resident of Broward County, Florida, and is a citizen of the State of Florida. Souza was a DOS employee as defined by the FLSA (29 U.S.C. § 203(e)(1)).

3. Monster is a Florida limited liability company with a principal place of business in Broward County, Florida. Monster is a citizen of the State of Florida. Souza is the managing member of Monster.

4. DOS is a Florida for-profit corporation with its principle place of business in Broward County, Florida. DOS is a citizen of the State of Florida. At all times relevant herein, DOS employed, or currently employs, at least fifteen persons, and was therefore an "employer" within the meaning of the FLSA (29 U.S.C. § 203(d)).

5. Boehm is a current resident of Broward County, Florida, and is a citizen of the State of Florida. Boehm is the president of DOS. At all times relevant herein, Boehm employed, or currently employs, at least fifteen persons, and was therefore an "employer" within the meaning of the FLSA (29 U.S.C. § 203(d)).

6. The jurisdiction of this Court is predicated upon 28 U.S.C. § 1331 as this case involves questions of federal law. Further, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiffs' state law claims also share all common operative facts with Souza's federal law claims, and the parties are identical.

2

Further, this Court's resolution of Plaintiffs' federal and Souza's state claims in a single action serves the interests of judicial economy, convenience, consistency and fairness to the parties.

7. Venue is proper in the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1391(b), wherein: (a) the violations of federal and state law occurred in this District; and (b) Defendants conduct business operations in this District.

## PRE-SUIT NOTIFICATION

8. On July 19, 2021, Plaintiffs provided DOS a pre-suit notice and evidence preservation letter.

## SOUZA'S FLSA ELIGIBILITY: ENTERPRISE AND INDIVIDUAL COVERAGE

9. Souza is eligible for FLSA enterprise coverage for two reasons. First, based on Souza's personal knowledge and publicly-available information, Defendants have more than 15 employees (including Souza) engaged in the sale and service of business office furniture and products that were delivered to DOS from jurisdictions outside of the State of Florida and (based on Souza's personal knowledge) served to: (a) residents of the State of Florida; and (b) customers from jurisdictions outside of the state of Florida, including Puerto Rico and the United States Virgin Islands. Second, based on Souza's personal knowledge, DOS generated, on average, gross revenues of approximately $4 million each year.

10. Souza is eligible for FLSA individual coverage since she regularly and directly participated in the ordering and service of business office furniture and products that were delivered to DOS from jurisdictions outside of the State of Florida and (based on Souza's personal knowledge) served to: (a) residents of the State of Florida; and (b) customers from jurisdictions outside of the state of Florida, including Puerto Rico and the United States Virgin Islands.

3

## THE PROPOSED FLSA COLLECTIVE

11.     Souza brings Count I in this action, individually, and on behalf of all others similarly situated, pursuant to 29 U.S.C. § 216(b). Souza and the similarly situated individuals were hired by Boehm and work(ed) at DOS as sales professionals with the titles of sales consultant, account executive, design consultant or similar job titles and/or duties at DOS. The proposed collective is defined as follows:

> All persons who are employed or were employed by Ronald R. Boehm (or a member of Direct Office Solutions, Inc., management at the direction, or with the permission, of Boehm) to work at Direct Office Solutions, Inc., as a sales professional with the titles of sales consultant, account executive, design consultant or similar job titles and/or duties and were classified as exempt at any time on or after January 1, 2017 (the "FLSA Collective").

12.     Souza has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b) and her consent form is attached as Exhibit A. Further, other former DOS sales professionals have indicated their intent to be a part of this action pursuant to 29 U.S.C. § 216(b) as putative "opt-in" plaintiffs through consent forms, which are attached hereto as Exhibit B. As this case proceeds, it is likely that additional individuals will file consent forms and join as "opt-in" plaintiffs.

13.     Souza and members of the FLSA Collective are or were employed by Boehm (or a DOS manager at the direction, or with the permission, of Boehm) to work at DOS within the meaning of the FLSA.

14.     During the collective period, Defendants failed to compensate Souza and each member of the FLSA Collective for overtime as required by federal law[1]. Further, Souza seeks relief for herself and the FLSA Collective under the FLSA.

---

[1] DOS may have violated the FLSA recordkeeping requirements. Specifically, 29 U.S.C. § 211(c) requires employers to "make, keep, and preserve" records of the wages and hours worked by its employees. The employer bears the burden of keeping accurate records, which must include hours worked per day and week; the amounts paid

15. Defendants' unlawful conduct is widespread, repetitious and consistent and affects Souza and the FLSA Collective.

16. Defendants' conduct is willful and in bad faith, and has caused significant damages to Souza and the FLSA Collective. Defendants are and were aware that Souza and each member of the FLSA Collective performed non-exempt work that required compensation at the rate set by federal law.

17. Defendants are, and were, aware of the FLSA's requirements.

18. Defendants are liable under the FLSA for failing to properly compensate Souza and the FLSA Collective.

19. Notice of this action should be sent to the FLSA Collective. There are numerous similarly situated current and former employees of Defendants who have been denied appropriate compensation in violation of the FLSA, who would benefit from a Court-supervised notice of the lawsuit and the opportunity to join the case. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## GENERAL ALLEGATIONS

20. DOS is a business office furniture store in Fort Lauderdale, Florida. Boehm serves as the President of the company.

21. DOS possesses a 60,000 square foot warehouse that is stocked with new and used furniture. DOS can fully customize every piece of furniture to meet client needs—from reupholstering fabric to refitting modular office pieces. Further, DOS sales professionals work

---

to each employee; and the daily starting and stopping times of individual employees. Employers must maintain payroll records for three years and the records of each employee's starting and stopping times for two years. Failure to maintain these records for the required time periods is a violation of 29 C.F.R. § 516.5(a) and 29 C.F.R. § 516.6(a)(1).

with clients on design, project management and budget elements of orders. DOS guarantees a full, on-time installation for clients' furniture orders.

22. In January 2017, Boehm hired Souza as a sales professional with the title of "Sales Consultant" to work at DOS. Souza's duties were varied, including, but not limited to: (a) networking, marketing and business development; converting leads into sales; working with clients with orders; measuring office spaces; using Giza (which is a design software) to assist clients with orders; and assisting clients with office furniture installation.

23. Souza and DOS did not enter into a written agreement; instead, the parties' business arrangement was governed by an oral contract. Boehm and DOS agreed to compensate Souza with a commission calculated at 20 percent of the gross profit from each client project. In mid-2018, Boehm and DOS increased Souza's commission from 20 to 22 percent.

24. On or about January 26, 2017, Souza began providing services to DOS. Boehm and the company classified Souza as an independent contractor.

25. However, despite the classification of Souza and other Sales Consultants as independent contractors, the DOS violated the FLSA when it misclassified Souza and other Sales Consultants for the following reasons:

    a. Boehm and DOS maintained significant control, supervision and management concerning the work of Souza and others, including: (a) providing sales quotas; (b) conducting mandatory sales and training meetings; (c) requiring a manager's approval before conducting certain tasks.

    b. Souza and others provide services for DOS only and not for any other company.

    c.    The daily work of Souza and others at DOS was usually done under the direction or supervision of a sales manager, who would review individuals' weekly sales numbers and direct what each person had to sell for the upcoming week.

    d.    DOS supplied Souza and others with the equipment and materials the person used in performing services for the company.

    e.    The services rendered by Souza and others required knowledge of DOS's sales, designs, lines and manufacturers, but did not demand a special or unique skillset.

    f.    The business relationship between Souza (and others) with DOS was permanent and not temporary or seasonal.

    g.    The services of Souza and others as sale professionals were an integral part of DOS's business.

26.    On March 22, 2017, Souza created Monster at the instruction of Boehm. Shortly thereafter, DOS began paying Souza for her services through Monster.

27.    In 2018, with the permission of Boehm and DOS, Souza and the other Sales Consultants revised their titles to "Account Executive and Design Consultant." During this time, Souza also was made a "Business Development Manager." Although Souza and others were "executives" or "managers" in title, the professionals did not serve in an exempt administrative or executive capacity as defined by the FLSA. For example:

    a.    The primary duties of Souza and other Account Executives did not involve the management of a recognized department, office or unit of DOS since: (i) the company did not have a "business development" or "account"

7

        department; (ii) the sales duties of Souza and other Account Executives did not change; (iii) the titles were perfunctory with a business development intent since they were designed to puff-up the titles to clients and third-parties; and (iv) Souza's business development work was secondary in precedence to her sales duties;

    b.    Souza and others did not direct the work of at least two or more other full-time employees or contractors on a regularly basis; and

    c.    Souza and others did not have the authority to hire or fire other employees, and the professionals' recommendations on such issues were not given consideration by Boehm and other DOS managers.

28.    From 2017 to the start of the COVD-19 pandemic in March 2020, DOS required Souza to work on-site pursuant to a set schedule. During the COVID-19 pandemic, however, Souza fulfilled her legal obligations to DOS at her residence.

29.    In March 2021, after the reopening of the local economy, Souza informed DOS that she would not be returning to work on-site, but would work out of her residence.

30.    In response, on March 22, 2021, DOS discontinued its business relationship with Souza and Monster. Further, DOS refused to pay approximately $6,400 in consultant fees and commissioners for work completed by Souza.

31.    Souza retained the services of the undersigned attorney to represent and pursue her interests in this litigation. As a result, Souza has incurred, and will continue to incur, attorney's fees, costs and expenses during this case.

32.    The FLSA's three-year statute of limitations does not apply because Boehm and DOS failed to educate or provide Souza and others similarly situated with the FLSA statutory

notice of workers' rights. Instead, Souza learned of this FLSA statutory notice through the undersigned attorney on or about July 18, 2021[2].

# COUNT I
## SOUZA CLAIM AGAINST DOS AND BOEHM
## FLSA: NON-PAYMENT OF OVERTIME WAGES

33. Souza, on behalf of herself, the FLSA Collective and other individuals similarly situated, re-alleges each and every allegation contained in paragraphs 1-32, as if they were fully set forth herein.

34. This claim is asserted by Souza and members of the FLSA Collective (and/or other individuals similarly situated) against DOS and Boehm for violations of the FLSA relating to the proper overtime compensation for non-exempt employees that occurred in the 2017, 2018, and 2019 calendar years.

35. At all times material herein, Souza and members of the FLSA Collective (and/or other individuals similarly situated) were non-exempt employees and entitled to the rights, protections and benefits provided under the FLSA.

36. DOS was required to compensate Souza and members of the FLSA Collective (and/or other individuals similarly situated) at time and one-half of their regular rate whenever they worked in excess of 40 hours a week. See 29 U.S.C. § 207.

37. Souza recalls she worked the following schedule during her employment with DOS:

| PERIOD | MANDATORY OFFICE DAYS (DAILY SCHEDULE) | OTHER WORK DAYS (DAILY SCHEDULE) | OVERALL WORK HOURS PER WEEK | OVERTIME HOURS PER WEEK (TOTAL WEEKS) |
|---|---|---|---|---|
| Jan. 26- Dec. 31, | Monday, Wednesday and Friday | Tuesday and Thursday[3] | 45[4] | 5 (48) |

---

[2] Tolling based on lack of notice continues until the claimant retains an attorney or obtains actual knowledge of her rights. See Cruz v. Maypa, 773 F. 3d 138, 147 (4th Cir. 2014).
[3] Souza worked on-site at DOS on Tuesdays and Thursdays.
[4] Souza regularly worked on sales during her lunch meal breaks; thus, the time is compensable under FLSA since it

9

| PERIOD | MANDATORY OFFICE DAYS (DAILY SCHEDULE) | OTHER WORK DAYS (DAILY SCHEDULE) | OVERALL WORK HOURS PER WEEK | OVERTIME HOURS PER WEEK (TOTAL WEEKS) |
|---|---|---|---|---|
| 2017 | (9:00 am to 6:00 pm) | (9:00 am to 6:00 pm) | | |
| 2018 | Monday, Wednesday and Thursday (9:00 am to 5:00 pm [and occasionally to 7:00 pm or 8:00 pm]) | Tuesday and Friday[5] (9:00 am to 5:00 pm) | 40 (occasionally 43.5) | 3.5 (8)[6] |
| 2019 | Monday, Wednesday and Thursday (9:00 am to 5:00 pm [and occasionally to 7:00 pm or 8:00 pm]) | Tuesday and Friday[7] (9:00 am to 5:00 pm) | 40 (occasionally 43.5) | 3.5 (6)[8] |
| Jan. 1-Mar. 22, 2020 | Monday, Wednesday and Thursday (9:00 am to 5:00 pm) | Tuesday and Friday[9] (9:00 am to 5:00 pm) | 40 | 0 |
| Mar. 23-Dec. 31, 2020 | None due to COVID-19 pandemic | Monday to Friday (2-3 hours) | 15 | 0 |
| Jan.-Mar. 2021 | None due to COVID-19 pandemic | Monday to Friday (2-3 hours) | 15 | 0 |
| **TOTAL** | | | | **289 overtime hours** |

38.    If Souza was classified as an employee in the position of a Sales Associate at another business office furniture company, she would have been compensated at a rate of $35[10]

---

was predominantly for the employer's benefit. See Kohlheim v. Glynn County, Ga., 915 F. 2d 1473, 1477 n. 19 (11th Cir. 1990) (noting "what matters in meal period cases is whether the employees are subject to real limitations on their personal freedom which inure to the benefit of their employer").

[5] Souza worked in and out of the DOS office on Tuesdays and Fridays. When she was out of the office, Souza was visiting with clients.

[6] Souza would work between 2 and 5 hours in excess of 40 hours during eight (8) weeks in 2018. For purposes of this pre-suit, Souza relies on an average number of hours (3.5) to calculate overtime. Documentation in possession of DOS would assist Souza with calculating a precise number.

[7] Souza worked in and out of the DOS office on Tuesdays and Fridays. When she was out of the office, Souza was visiting with clients.

[8] Souza would work between 2 and 5 hours in excess of 40 hours during six (6) weeks in 2018. For purposes of this pre-suit, Souza relies on an average number of hours (3.5) to calculate overtime. Documentation in possession of DOS would assist Souza with calculating a precise number.

[9] Souza worked in and out of the DOS office on Tuesdays and Fridays. When she was out of the office, Souza was visiting with clients.

[10] The hourly rate used for this calculation is based on a comparable salary at Empire Today LLC, which is a competitor of DOS. Specifically, according to an online site, a "Sales Representative" earns an annual base pay average of $73,195, excluding additional compensation (i.e., commissions, bonuses and tips). See "Empire Today Sales Representative Salaries," Glassdoor (n.d.), available at: https://www.glassdoor.com/Salary/Empire-Today-

or more an hour. As a result, under the FLSA, Defendants owe Souza at least $10,115 in overtime compensation and $10,115 in liquidated damages.

39.     DOS and Boehm's failure to properly compensate Souza and members of the FLSA Collective (and/or other individuals similarly situated) was willful.

40.     As a direct and proximate result of DOS and Boehm's unlawful conduct and willful violations of the FLSA described in this Complaint, at least $10,115 in unpaid overtime compensation was withheld from Souza and for which DOS and Boehm are liable under the FLSA. The specific amount of unpaid compensation withheld from Souza and members of the FLSA Collective (and/or other individuals similarly situated) is unknown, but will be determined at trial (the proof of which will be ascertained through the discovery of wage records from DOS and Boehm).

**COUNT II
SOUZA AND MONSTER CLAIM AGAINST DOS
<u>BREACH OF ORAL AGREEMENT</u>**

41.     Souza and Monster re-allege each and every allegation contained in paragraphs 1-7 and 20-32, as if they were fully set forth herein.

42.     In January 2017, Souza and DOS entered into an oral agreement. Specifically, Souza agreed to provide sales professional services (under various titles) for DOS. In return, DOS agreed to compensate Souza with a commission calculated at 20 percent of the gross profit from each client project. In mid-2018, DOS increased Souza's commission from 20 to 22 percent.

43.     On January 26, 2017, Souza began performing under the agreement. In particular, Souza provided DOS various services, including the following: (a) networking, marketing and

---

Sales-Representative-Salaries-E39335_D_KO13,33.htm (visited Sep. 12, 2021). Using this average annual base pay, a full-time (40 hours a week) hourly rate is $35.19.

business development; converting leads into sales; working with clients with orders; measuring office spaces; using Giza (which is a design software) to assist clients with orders; and assisting clients with office furniture installation.

44. On March 22, 2017, Souza created Monster. Shortly thereafter, DOS began paying Souza for her services through Monster.

45. On March 22, 2021, DOS breached the agreement by terminating Souza's without notice and payment of fees and commissions in which she earned.

46. As a result of the breach, Souza suffered approximately $22,400 in damages. For example, DOS refused to pay approximately $6,400 in consultant fees and commissions for work completed by Souza. Further, DOS owes Souza approximately $8,000 in underpaid commissions through the company's use of a fraudulent scheme to reduce the commissions of its employees. Specifically, in early 2020, Souza learned DOS routinely would add fictional or overinflated costs and expenses to the invoices to reduce her commissions. Souza calculates DOS's scheme reduced her commissions by at least $8,000.

### COUNT III
### SOUZA AND MONSTER CLAIM AGAINST DOS
### UNJUST ENRICHMENT

47. Souza and Monster re-allege each and every allegation contained in paragraphs 1-7 and 20-32, as if they were fully set forth herein.

48. In January 2017, Souza agreed to provide DOS with a benefit. Specifically, Souza agreed to provide sales professional services (under various titles) for DOS. In return, DOS agreed to compensate Souza with a commission calculated at 20 percent of the gross profit from each client project. In mid-2018, DOS increased Souza's commission from 20 to 22 percent.

49. On January 26, 2017, DOS began accepting (and, thereafter, providing compensation for) the benefit when Souza began performing the promised services. In particular, Souza provided DOS various services, including the following: (a) networking, marketing and business development; converting leads into sales; working with clients with orders; measuring office spaces; using Giza (which is a design software) to assist clients with orders; and assisting clients with office furniture installation.

50. On March 22, 2017, Souza created Monster. Shortly thereafter, DOS began paying Souza for her services through Monster.

51. On March 22, 2021, DOS continue to accept Souza's benefits, but refused to provide her or Monster with payment of $6,400 in earned consultant fees and commissions. Further, in early 2020, Souza learned DOS routinely would add fictional or overinflated costs and expenses to the invoices to reduce her commissions. Souza calculates DOS's scheme reduced her commissions by at least $8,000.

52. Based on the circumstances, it would be unjust for DOS to retain the benefits without compensation.

## COUNT IV
## SOUZA AND MONSTER CLAIM AGAINST DOS
## QUANTUM MERUIT

53. Souza and Monster re-allege each and every allegation contained in paragraphs 1-7 and 20-32, as if they were fully set forth herein.

54. In January 2017, although a written agreement was never signed, since Souza (and, after March 2017, via Monster) and DOS formed and developed a relationship where Souza agreed to continue to provide sales and other professional services and, in return, DOS promised to provide compensation. DOS compensated Souza with a commission calculated at 20

percent of the gross profit from each client project. In mid-2018, DOS increased Souza's commission from 20 to 22 percent.

55. On January 26, 2017, DOS began accepting (and, thereafter, providing compensation for) the benefit when Souza began performing the promised services. In particular, Souza provided DOS various services, including the following: (a) networking, marketing and business development; converting leads into sales; working with clients with orders; measuring office spaces; using Giza (which is a design software) to assist clients with orders; and assisting clients with office furniture installation.

56. On March 22, 2017, Souza created Monster. Shortly thereafter, DOS began paying Souza for her services through Monster.

57. On March 22, 2021, DOS concluded the relationship. However, Souza expected to be paid compensation for the services already provided to DOS. For example, Souza and Monster are owed $6,400 in earned consultant fees and commissions. Further, in early 2020, Souza learned DOS routinely would add fictional or overinflated costs and expenses to the invoices to reduce her commissions. Souza calculates DOS's scheme reduced her commissions by at least $8,000.

**PRAYER FOR RELIEF**

58. WHEREFORE, Plaintiffs, Monster Consulting Group LLC and Flávia Z. Souza, and members of the FLSA Collective request this Court issue judgment against Defendants, Direct Office Solutions, Inc., and Ronald R. Boehm, as follows:

    a.    Declaring Defendant's policies, practices, protocols and other decisions as alleged in this Complaint are unlawful;

b. Awarding interest on compensation and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

c. Enjoining Defendants from engaging in the unlawful acts complained in this Complaint;

d. Awarding attorney's fees, costs and expenses to Souza's legal counsel, pursuant to 29 U.S.C. § 216(b) and any other applicable federal law;

e. Designation of this action as a collective action on behalf of Souza and those similarly situated, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly situated apprising them of the pendency of this action, and permitting them to assert timely FLSA claims by filing individual consent forms pursuant to 29 U.S.C. § 216(b);

f. Judgment that Souza and members of the FLSA Collective are non-exempt employees entitled to protection under the FLSA;

g. Judgment against Defendant for violations of the FLSA;

h. Finding that Defendant's violations of the FLSA was willful;

i. Award an amount equal to the damages of Souza and the FLSA Collective as liquidated damages;

j. Award an amount equal to the damages of Plaintiffs under the Florida common law theories of breach of oral agreement, unjust enrichment or quantum meruit; and

k. Granting such other relief (in law or equity), pursuant to the FLSA and the Florida common law, to Souza and the FLSA Collective as this Court may deem just and proper.

## **JURY DEMAND**

59.  Plaintiffs and members of the FLSA Collective demand a trial by jury of all issues so triable pursuant to Federal Rule of Civil Procedure 38.

## VERIFICATION

I understand that I am swearing under the penalties of perjury as articulated in the laws of the State of Florida and the United States of America and affirming that the facts in this Complaint are true and correct, that the exhibits attached hereto comprise authentic copies of the original documents that are stored in my files, and that the punishment for knowingly making a false statement includes fines and/or imprisonment.

_____
Flávia Z. Souza
On her behalf and as corporate representative
of Monster Consulting Group LLC

State of Florida
County of __Broward__

Sworn to (or affirmed) and subscribed before me this __20th__ day of September 2021, by __Flavia Z. Souza__ (name of person making statement).

_____
Signature of Notary Public

_____
Print, Type, or Stamp Commissioned Name of Notary Public

Personally Known: __✓__   OR Produced Identification: _____

Type of Identification Produced: _____

[Notary Seal: TAMARA BEVILL, MY COMMISSION EXPIRES AUGUST 12, 2024, #GG 978169, Bonded thru Notary Public Underwriters, NOTARY PUBLIC, STATE OF FLORIDA]

Dated: October 11, 2021.

Respectfully submitted,

s/ Michael L. Buckner

_____
Michael L. Buckner, Esquire
Florida Bar No. 106331
Email: michaelbucknerlaw@gmail.com
5224 NW 96th Drive
Coral Springs, Florida 33076-2487
Office: +1-954-347-0112
Facsimile: +1-954-513-4796

*Attorney for the Plaintiffs, Flávia Z. Souza (and all others similarly situated) and Monster Consulting Group LLC*